UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL D. CORNELIUS

        Petitioner,         Case No. 1:13-cv-992

v.         Honorable Paul L. Maloney

JOHN PRELESNIK

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Following a jury trial in the Ingham County Circuit Court, Petitioner Michael D. Cornelius was convicted of first-degree felony murder, MICH. COMP. LAWS § 750.316c, possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS 750.227b, carrying a concealed weapon, MICH. COMP. LAWS § 750.227, and being a felon in possession of a firearm, MICH. COMP. LAWS § 750.224f. On June 22, 2011, Petitioner was sentenced as a fourth-offense felony offender, MICH. COMP. LAWS § 769.12, to life imprisonment on the murder conviction, 76 to 152 months on the carrying-concealed and felon-in-possession convictions, and two years for felony firearm.

In his *pro se* petition, Petitioner raises four grounds for relief, the same grounds he raised in the Michigan Court of Appeals and Michigan Supreme Court on his direct appeal:

    I.    INSUFFICIENT EVIDENCE TO FIND FOR THE CONVICTIONS.

    II.    FAILURE TO ESTABLISH PROBABLE CAUSE PRIOR TO THE ISSUANCE OF THE COMPLAINT AND WARRANT.

    III.    [PETITIONER] WAS DENIED HIS RIGHT TO A FAIR AND SPEEDY TRIAL.

    IV.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

(Pet., ECF No. 1, PageID.6-10.)[1] On April 6, 2014, Respondent filed an answer to the petition (ECF No. 11), stating that the grounds should be denied because they are noncognizable, procedurally defaulted, and/or without merit. On May 7, 2014, Respondent filed the state-court record, pursuant to Rule 5, RULES GOVERNING § 2254 CASES. (ECF No. 13.)[2] Upon review and applying the AEDPA standards, the Court finds that all habeas grounds are meritless. Accordingly, the Court will deny the petition for failure to raise a meritorious federal claim.

## Procedural and Factual Background

On October 28, 2009, a man wearing a green t-shirt, blue jeans, and a bandana covering the lower half of his face, approached drug dealer Anthony Pryor near the corner of Oakland Avenue and Seymour Avenue in Lansing, Michigan. The man demanded Pryor's money and then fatally shot him with

---

[1] By document filed May 19, 2016, Petitioner indicated he wished to add an issue to his petition. (ECF No. 15.) The request references insufficiency of the evidence (Issue I) and failure to establish probable cause prior to issuance of the complaint and warrant (Issue II). The Court will consider the proposed supplement as part of its consideration of Issues I and II.

[2] The Rule 5 materials include several transcripts of the trial court proceedings. The transcripts shall be referenced as follows:

| | |
|---|---|
| March 5, 2010 Preliminary Examination | (Prelim. Examination Tr., ECF No. 13-2, PageID.__) |
| May 16, 2011 Trial Transcript (Volume 1) | (Trial Tr. I, ECF No. 13-3, PageID.__) |
| May 17, 2011 Trial Transcript (Volume 2) | (Trial Tr. II, ECF No. 13-4, PageID.__) |
| May 19, 2011 Trial Transcript (Volume 3) | (Trial Tr. III, ECF No. 13-5, PageID.__) |
| May 20, 2011 Trial Transcript (Volume 4) | (Trial Tr. IV, ECF No. 13-6, PageID.__) |
| May 23, 2011 Trial Transcript (Volume 5) | (Trial Tr. V, ECF No. 13-7, PageID.__) |
| May 24, 2011 Trial Transcript (Volume 6) | (Trial Tr. VI, ECF No. 13-8, PageID.__) |
| June 22, 2011 Sentencing Transcript | (Sentencing Tr., ECF No. 13-9, PageID.__). |

a handgun. The man went through Pryor's clothes, apparently looking for money, drugs, or both; and then the man fled.

Sherry Bloss testified that she worked at Harvest Creative Services, a business a couple of blocks east and one block north of the intersection Seymour and Oakland. (Trial Tr. III, ECF No. 13-5, PageID.391-93.) On the day of the shooting, at 3:34 p.m.,[3] a black man wearing a green shirt and blue jeans rattled the locked front door of the business where she was working. (*Id*., PageID.392-95.) The incident was captured by Harvest's video surveillance cameras. The man in the video was Petitioner. (Trial Tr. II, ECF No. 13-4, PageID.308.) The man in the video was wearing a green t-shirt with a design on the front and blue jeans. (Trial Tr. IV, ECF No. 13-6, PageID.417, 435.) Detective Kim Kranich released images from the video surveillance cameras to the media.[4] (Trial Tr. V, ECF No. 13-7, PageID.463-64.)

Eyewitnesses saw the shooting. Each of the witnesses described the attacker's clothes. Some of the witnesses, Mr. Pryor's friends who were just a few feet away, said the man in the bandana

---

[3] The first 911 call, presumably the call from Mr. Lee described below, was made at 3:30 p.m. (Trial Tr. V, ECF No. 13-7, PageID.476.)

[4] Detective Kranich indicated that the image(s) were published as part of the Crime Stoppers program. (Trial Tr. V, ECF No. 13-7, PageID.463.) The website for Crime Stoppers of Mid Michigan describes the program as follows:

> Crime Stoppers of Mid Michigan, founded in 1989, is a non profit community organization that raises funds for rewards encouraging citizen witnesses to call an anonymous tip line to solve felony crimes in the Mid Michigan area. Crime Stoppers is an alliance of the community, the media and law enforcement with the goal of creating a safer place to live and work by getting felons off the streets and into the judicial system.
>
> Crime Stoppers of Mid Michigan is managed by a volunteer, unpaid board of directors with law enforcement coordinators in cooperation with the media through WLNS, TV 6, in Lansing. All funds raised stay in the Mid Michigan area and are used to improve the safety of our communities.

Crime Stoppers of Mid Michigan, http://www.crimestoppersofmidmichigan.com.

was Petitioner. The resolution of Petitioner's habeas claims turns on the testimony of those eyewitnesses.

Rodney Lee testified that he, Anthony Pryor, Anton Snitgen, and Sean Beene were hanging out at Sean Beene's apartment in a house at 900 Seymour, at the corner of Seymour and Oakland Avenues in Lansing, Michigan. (Trial Tr. II, ECF No. 13-4, PageID.341-44.) As Mr. Lee, Mr. Pryor, and Mr. Beene were standing outside smoking cigarettes and waiting for Mr. Lee's friend to pick him up, the attacker came running around the corner of the house, grabbed Mr. Pryor, pushed him and shot him in the chest. (*Id*., PageID.344.) Mr. Lee described the attacker's clothing as light colored jeans, a green t-shirt, and a bandana. (*Id*.)[5] The attacker then went through Mr. Pryor's pockets and ultimately fled east down Oakland Street. (*Id*., PageID.347-48.) Mr. Lee called 911 on his cell phone while the attack was taking place. (*Id*., PageID.344.)

Mr. Lee testified that he had never seen the attacker before, but that he got a good look at the upper half of the attacker's face. (*Id*., PageID.348.) Mr. Lee identified Petitioner as the attacker for the first time at the preliminary examination and later at trial. (*Id*., PageID.344, 348.) Those were the only times he had seen Petitioner or photos of Petitioner since the incident on October 28, 2009. (*Id*., PageID.348, 354-55; Prelim. Examination Tr., ECF No. 13-2, PageID.207-09, 226.)

Douglas Barth was driving by the house on the corner of Seymour and Oakland when the incident occurred. (Trial Tr. III, ECF No. 13-5, PageID.368-69.) Mr. Barth's description of the incident,

---

[5]Immediately after the incident, Mr. Lee was interviewed by Lansing Police Officer Lee McAllister. Mr. Lee told Officer McAllister that the bandanna was green and that the t-shirt was green; Mr. Lee did not mention that the shirt had a pattern. (Trial Tr. II, ECF No. 13-4, PageID.315-16.)

and the attacker's clothing matched Mr. Lee's fairly closely (blue jeans, baggy green t-shirt, and purple bandanna), but Mr. Barth did not see the gun. (*Id.*, PageID.368-70.)

Vicky Bohannon was also driving by 900 Seymour on Oakland Street near the time of the shooting. (*Id.*, PageID.382-83.) She heard a pop. (*Id.*) She saw a 18 to 25 year-old dark-skinned male with a gray hoodie and a bandanna[6] covering the lower half of his face. (*Id.*) She thought he was going to come into the street. (*Id.*) Instead, he headed east on the sidewalk. (*Id.*, PageID.383-84.)

Thomas Smith was painting the porch on the house across the street from 900 Seymour when he heard a loud noise. (*Id.*, PageID.386-87.) He saw three men running away from 900 Seymour and saw a tall black male, 18 or 19 years-old, wearing a green long-sleeved coat and a bandana push another man to the ground, go through the prone man's pockets, and then walk away to the east. (*Id.*, PageID.387-90.)

Anton Snitgen was in the apartment at 900 Seymour when he heard the shot. (Trial Tr. IV, ECF No. 13-6, PageID.413-14.) Mr. Lee then burst into the apartment and then went back out the door; Mr. Snitgen followed. (*Id.*) Mr. Snitgen saw Mr. Pryor prone on the ground and a man crouched over him. The man was wearing a green t-shirt, light blue jeans, and a bandana. (*Id.*, PageID.414.) The man had a gun. (*Id.*, PageID.414-15.) Mr. Snitgen and Mr. Beene then ran around to the other side of the house and called 911. (*Id.*, PageID.415.) They came full circle around the house and saw the attacker heading away from the scene. (*Id.*) Mr. Snitgen's description of the attacker's clothing was similar to the descriptions of the other witnesses. (*Id.*, 417.) The day of the shooting, he told police the attacker wore

---

[6]Ms. Bohannon described the bandanna as red or blue with a black pattern. (Trial Tr. III, ECF No. 13-5, PageID.385.)

a green coat, or as he recharacterized it at trial, a green hooded sweatshirt. (*Id*., PageID.418-19.) At trial, he described it as an oversized green tshirt. He did not get a good look at the attacker's face. (*Id*., PageID.419-20.) Mr. Snitgen acknowledged that the person in the video surveillance image was not wearing a hoodie or a coat or anything resembling a sweatshirt. (*Id*. at PageID.423-24.) Mr. Snitgen testified the attacker crossed Oakland Street. (*Id*., PageID.424.)

Shaun Beene testified that he had just returned to the apartment when he looked in the window and saw a man in a green shirt, blue jeans, and white shoes, with a blue bandana covering his face, walking through the house. (*Id*., PageID.430.) As he rounded the corner, the man was outside. (*Id*.) Mr. Beene could not make sense of the scenario, so he tugged the bandana down and asked what was going on. (*Id*., PageID.430-31.) The man pulled the bandana back up and went for Mr. Pryor. (*Id*., PageID.431.) Mr. Beene's description of the fracas that followed differed in several respects from the description offered by Mr. Lee, but both said the attacker grabbed Mr. Pryor, demanded drugs, and shot him. (*Id*., PageID.432-33.) Mr. Beene identified Petitioner as the attacker. (*Id*., PageID.431.)

Mr. Beene testified that he looked at photos provided by Detective Kranich, but he did not recognize anyone. (*Id*., PageID.435.) A day or two later, however, he saw the video surveillance image on Crime Stoppers. (*Id*.) The gentleman in the picture has "the same exact outfit, and the body, the build, you know, everything that was-that I saw that day on my birthday was that man was right there. I, again, see him, the exact same outfit, everything." (*Id*.)

Mr. Beene described the shooter as six-foot, two-inches tall. (*Id.*, PageID.438.)[7] Mr. Beene also testified that the shooter crossed Oakland to the south based on what the others present had indicated by pointing. (*Id.*, PageID.446.) Mr. Beene testified that he reviewed a photo lineup with Detective Kranich, but that he was not able to pick out Petitioner. (*Id.*)

There was no physical evidence linking Petitioner to the crime other than the eyewitness identifications by Mr. Lee and Mr. Beene. The prosecutor and defense counsel placed on the record a stipulation regarding the tracking investigation conducted by Lansing Police Officer Christie Szezny and her police dog, Chase. (*Id.*, PageID.477-78). Chase and Officer Szezny tracked the shooter from the crime scene on Oakland, east along the sidewalk, south across Oakland at Capitol, and continuing south across Saginaw. The track was terminated near the intersection of Lapeer and Capitol due to heavy foot traffic from Lansing Community College. The track headed south of Oakland, the business that recorded Petitioner at the door was north of Oakland.

The jury deliberated about eight hours before returning its verdict.

With the assistance of counsel, Petitioner appealed his convictions to the Michigan Court of Appeals. Appellate counsel challenged only the sufficiency of the evidence. (Appellant's. Br., ECF No. 1-1, PageID.22-52.) Petitioner raised the remaining three issues in his *pro per* supplemental brief. (Appellant's Supplemental Br., ECF No. 1-1, PageID.53-80.) The Court of Appeals rejected Petitioner's claims in an unpublished opinion dated August 14, 2012. *People v. Cornelius*, No. 305076, 2012 WL

---

[7] Petitioner submitted evidence through former police officer Owen Deatrick that Petitioner was approximately five-feet, eight inches tall, thirty-five years-old, and sported distinctive tattoos on the back of both his hands. (Trial Tr. IV, ECF No. 13-7, PageID.478-80.) These details regarding Petitioner distinguished him from the taller and younger person described by the eyewitnesses.

3322372 (Mich. Ct. App. Aug. 14, 2012). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. That court denied leave by order entered April 1, 2013. *People v. Cornelius*, 828 N.W.2d 34 (Mich. 2013).

Petitioner filed the instant petition seeking habeas relief on September 6, 2013.[8]

## **Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

---

[8] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner dated his application on September 6, 2013, and it was received by the Court on September 10, 2013. Thus, it must have been handed to prison officials for mailing at some time between those dates. For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## Discussion

### I. Sufficiency of the evidence

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401 02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from

basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier of fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [appellate court's] consideration of the trier of fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency of the evidence grounds. *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals noted that Mr. Lee and Mr. Beene identified Petitioner as the person who accosted, shot, and robbed Mr. Pryor. *People v. Cornelius*, No. 305076, 2012 WL 3322372 at *1 (Mich. Ct. App. Aug. 14, 2012). Under the *Jackson* standard, such evidence is sufficient to support finding the essential elements of the charged crimes beyond a reasonable doubt. The court of appeals recognized, however, that Petitioner's was not challenging whether the Lee and Beene identifications of Petitioner were sufficient to support the convictions; instead, Petitioner was arguing that the identifications were so tainted that the testimony should not have been permitted at all. *Id.* The court of appeals refused to consider that issue absent manifest injustice because Petitioner had failed to raise the issue below and, thus, had procedurally defaulted the claim. *Id.*

"If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788, 2801 (2010). Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a

procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). See also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, petitioner raises ineffective assistance of counsel as cause excusing his default, the procedural default issue raises more questions than the case on the merits. In these circumstances, the Court will assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

As a preliminary matter, Petitioner's argument that the identifications were impermissibly suggestive under state law is not cognizable in this proceeding. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Moreover, as a matter of federal constitutional law, Petitioner has failed to demonstrate that the identifications by Mr. Lee and Mr. Beene were so impermissibly suggestive that they violated the Due Process Clause. There can be little question that Mr. Lee's identification of Petitioner at the preliminary examination was the product of suggestive circumstances or that Mr. Beene's identifications at the preliminary examination or following the publication of the video surveillance image on Crime Stoppers were the products of suggestive circumstances. The Supreme Court has expressly stated that such identifications are "suggestive." *See Perry v. New Hampshire*, 132 S. Ct. 716, 727-28 (2012) ("Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do. Out-of-court identifications volunteered by witnesses are also likely to involve suggestive circumstances. For example, suppose a witness identifies the defendant to police officers after seeing a photograph of the defendant in the press captioned "theft suspect," or hearing a radio report implicating the defendant in the crime."). But the fact that an identification procedure is suggestive does not, standing alone, implicate due process protections. Rather, there must be "improper law enforcement activity" before a suggestive identification requires further scrutiny. *Id.* at 721.[9] Because the *Perry* Court used in-court identifications and the general publication of a suspect's photograph as examples of suggestive identifications that do not implicate due process protections, Petitioner cannot show that the Michigan courts' rejection of his claims is contrary to or an unreasonable application of clearly established federal law.

---

[9]Even where the suggestive identification is the product of improper state action, the evidence might still be admitted. The existence of improper state action simply requires further inquiry into the reliability of the identification. *Perry*, 132 S. Ct. at 720. The Court noted that even where suggestive identification evidence is admitted, the criminal defendant enjoys layers of protection from the right of confrontation, the right to counsel, instructions regarding the fallibility of eyewitness testimony, and the requirement that guilt be proven beyond a reasonable doubt. *Id.* at 728-29. Petitioner enjoyed all of those protections here.

II. Probable cause to support issuance of the complaint and warrant

In his second ground for relief, Petitioner alleges that there was no probable cause to support his arrest. Petitioner's assertion does not provide any basis for habeas corpus relief. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (illegal arrest or detention does not void a subsequent conviction). The method by which petitioner's presence was procured at trial does not provide a basis for invalidating his criminal conviction. *See Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); *Frisbee v. Collins*, 342 U.S. 519, 522 (1952); *Ker v. Illinios*, 119 U.S. 436, 444 (1886); *Browning v. Jabe*, No. 88-1307, 1990 WL 6943, at * 1 (6th Cir. Feb. 1, 1990) ("petitioner's arguments that his arrest was absent probable cause . . . [are] irrelevant, as an unlawful arrest is not a defense to a valid conviction.") (*citing United States v. Crews*, 445 U.S. 463, 474 (1980)). Accordingly, his contention, even if correct, does not entitle him to habeas relief.

III. Speedy trial

Petitioner contends that the eighteen-month, ten-day period that passed between his arrest and his conviction violated his Sixth Amendment right to a speedy trial. Petitioner's argument is suspect on its face. "A criminal defendant cannot win a Sixth Amendment challenge by pointing to a calendar and counting off the days." *Martinez v. United States*, 828 F.3d 451, 458 (6th Cir. 2016). Petitioner has done little more than count days here. The length of the delay, however, is only one of the four factors the Supreme Court has instructed must be considered in speedy trial cases:

> The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.
>
> A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

*Barker v. Wingo*, 407 U.S. 514, 529-30 (1972) (footnotes omitted).

The Michigan Court of Appeals considered the four *Barker* factors in evaluating Petitioner's claim. *Cornelius,* 2012 WL 3322372 at *2 ("To determine whether Cornelius's right to a speedy trial was violated, this Court 'must consider four factors: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the right, and (4) any prejudice to the defendant.'") (footnote omitted). The court of appeals presumed prejudice because the delay exceeded six months, a presumption compelled by state law, but not the Sixth Amendment. *Id.* Nonetheless, the court of appeals concluded that some portion of the delay was attributable to Petitioner and that he never asserted the right. *Id.* Moreover, Petitioner did not identify any prejudice resulting from the delay. The court of appeals concluded "Cornelius's right to a speedy trial was not violated." *Id.*

This Court must presume the correctness of the state court's finding of fact with regard to Petitioner's role in causing the delay and failing to assert the right, absent clear and convincing evidence to the contrary. Petitioner has supplied no contrary evidence. Petitioner has similarly failed to demonstrate how the state court's balancing of the factors is contrary to or an unreasonable application of clearly established federal law. That is a particularly difficult showing here, where the analysis is recognized as ad

hoc.[10] Accordingly, Petitioner's claim that his Sixth Amendment right to a speedy trial was violated, has no merit.

### IV. Ineffective assistance of counsel

Petitioner complains that his trial counsel rendered ineffective assistance in three respects: counsel failed to challenge the arrest warrant; counsel failed to raise the speedy trial violation; and counsel failed to file a motion to dismiss, presumably premised on the suggestive identifications. (Appellant's Supplemental Appeal Br., ECF No. 1-1, PageID.71.)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a

---

[10]"'The more general the rule at issue'–and thus the greater the potential for reasoned disagreement among fair-minded judges–'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. 766. 776 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner claims his counsel was ineffective for failing to object to the lack of probable cause to support the warrant and the delay preceding his trial. Petitioner also challenges his counsel's failure to file a motion to dismiss based on the tainted identifications. The Michigan Court of Appeals rejected Petitioner's ineffective assistance claims:

> To successfully raise a claim of ineffective assistance of counsel, Cornelius must show: (1) "that counsel's performance fell below objective standards of reasonableness," and (2) that but for counsel's error, "it is reasonably probable that the results of the proceeding would have been different." Effective assistance of counsel is presumed and the burden is on the defendant to prove otherwise. As discussed above, both the complaint and the warrant were valid and Cornelius's right to a speedy trial was not violated. Additionally, while defense counsel did not file a motion to dismiss, counsel did move for a directed verdict,

which was denied. Moreover, as found above, there was sufficient evidence to support the jury's verdict. Because counsel is not ineffective for "[f]ailing to advance a meritless argument or raise a futile objection," Cornelius's argument must fail.

Cornelius, 2012 WL 3322372 at *2 (footnotes omitted).

As the Michigan Court of Appeals recognized, counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000). As set forth above, as a matter of federal constitutional law, the issues Petitioner claims his counsel failed to raise (unsupported warrant, speedy trial, and suggestive identifications) have no merit. Based on the Michigan Court of Appeals analysis, the same is true with respect to Petitioner's claims as a matter of state law.[11] Accordingly, Petitioner's ineffective assistance claims have no merit.

## Conclusion

In light of the foregoing, the Court will deny Petitioner's application because it fails to present a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals

---

[11]The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76) ("'[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'").

has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated:   September 30, 2016             /s/ Paul L. Maloney
                                        Paul L. Maloney
                                        United States District Judge